

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed November 23, 2009            United States Bankruptcy Judge

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | CHAPTER 7 |
| DANNY JOE MCCLURE AND | § | |
| KIMBERLY DESKINS MCCLURE, | § | CASE NO. 07-43036 (DML) |
| | § | |
| DEBTORS. | § | |

| | | |
|---|---|---|
| DANNY JOE MCCLURE AND | § | |
| KIMBERLY DESKINS MCCLURE | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | ADV. NO. 08-04000 |
| | § | |
| BANK OF AMERICA, | § | |
| CREDITORS FINANCIAL GROUP, LLC, | § | |
| AND PETER REBELO, | § | |
| | § | |
| DEFENDANTS. | § | |

### Memorandum Opinion

The above-styled adversary proceeding was tried to the court on September 21 and 22, 2009. At trial, the court heard testimony from Danny McClure ("McClure"),

1

Kimberly McClure (with McClure, the "McClures"), Susan Sayarot, a performance manager for Bank of America ("BOA"), Henry Swayze ("Swayze"), President of Creditors Financial Group ("CFG"), Dr. Jonathan Lam, M.D. ("Lam"), McClure's physician, and St. Clair Newbern, III ("Newbern"), attorney for the McClures. The parties designated for the court's consideration the deposition of Kenni Hisel ("Hisel"), a portfolio officer at BOA. Various exhibits were also entered into evidence, identified below as necessary.

The court exercises core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(O). This memorandum opinion embodies the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052.

## I. Background

The McClures filed for relief under chapter 7 of the Bankruptcy Code (the "Code")[1] on July 18, 2007. Their schedules reflected numerous debts, including several owed to BOA. The BOA debts were a combination of the McClures' personal debts and debts arising from personal guarantees on business debts incurred by Qualico, Inc. ("Qualico"), a corporation which was substantially owned by the McClures. Qualico filed for chapter 7 relief contemporaneously with the McClures. The McClures were granted a discharge pursuant to Code § 727 on November 15, 2007. None of the debts owed BOA by the McClures and Qualico were excepted from the McClures' discharge.

Two debts in particular are relevant in this adversary proceeding. Those two debts are listed on the McClures' schedule F as personal guarantees on business credit

---

[1] 11 U.S.C. §§ 101 *et seq.*

cards issued by BOA, with account numbers ending in 3299 and 2099.[2] Both of those debts are also reflected on Qualico's schedule F as BOA credit cards.[3]

Shortly after the McClures received their discharge, BOA referred those two accounts to CFG for collection. When CFG received the two accounts from BOA, each account was assigned to a different collector. The account ending in 3299 was assigned to Craig Osborne ("Osborne"), and the account ending in 2099 was assigned to Peter Rebelo ("Rebelo"). Osborne and Rebelo then went about attempting to collect the debts and, in furtherance of collection, contacted McClure, as discussed below.

## II. Discussion

The McClures allege that CFG, Rebelo, and BOA (together, "Defendants") willfully and intentionally violated the discharge injunction of section 524(a)(2) of the Code. The McClures seek an order holding Defendants in civil contempt of this court and awarding the McClures damages.

A party seeking an order of civil contempt must establish by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required (or prohibited) certain conduct by the respondent; and (3) that the respondent failed to comply with the court's order. *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999) (citing *FDIC v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995)). In other words, "'[a] party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with

---

[2]     *See* Plaintiff's exhibit 17.

[3]     *See* Plaintiff's exhibit 17.

knowledge of the court's order.'" *Piggly Wiggly Clarksville*, 177 F.3d at 382 (citing *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995)).

Section 524 of the Code provides that an order discharging a debt in a bankruptcy case "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(2). Even though section 524(a)(2) is a statutory provision, as it grants relief triggered by the discharge order, the injunction has been equated to an order of the court. 4 COLLIER ON BANKRUPTCY ¶ 524.02[2] (15th ed. rev. 2009). The discharge injunction is broad and prohibits any act taken to collect a discharged debt as a personal liability of the debtor. *Id.* Thus, the discharge injunction is a definite and specific court order that requires creditors to refrain from particular acts, *i.e.*, any act to collect, recover, or offset any discharged debt as a personal liability of the debtor. If any party knowingly violates the discharge injunction, the court may properly hold that party in civil contempt. *Id.*

There is no question that each of Defendants violated the discharge injunction. BOA violated the discharge injunction when it referred the two accounts to CFG for collection. *See Faust v. Texaco Refining and Marketing Inc. (In re Faust)*, 270 B.R. 310 (Bankr. M.D. Ga. 1998). CFG violated the discharge injunction when Rebelo and Osborne contacted McClure attempting to collect on the two accounts. And Rebelo himself violated the discharge injunction when he attempted to collect on the account assigned to him. The issue, therefore, is whether Defendants violated the discharge injunction knowingly.

4

### A. Bank of America

Hisel testified at her deposition that BOA was aware of the McClures' personal bankruptcy no later than November 15, 2007, the date of the McClures' discharge.[4] Thus, BOA knew as of that date that the McClures had been discharged from their personal guarantees on the two accounts. Nevertheless, on November 28, 2007, Hisel sent both accounts to CFG for collection. A creditor with knowledge of a debtor's discharge knowingly violates the injunction of section 524(a)(2) when the creditor thereafter attempts to collect from the debtor. *See* 4 COLLIER ON BANKRUPTCY ¶ 524.02[2][C] (15th ed. rev. 2009). Thus, BOA knowingly violated the discharge injunction and is liable for civil contempt.

### B. Creditors Financial Group

The question of whether CFG knowingly violated the discharge injunction requires a more rigorous factual analysis. Swayze testified that, when BOA assigns accounts to CFG for collection, the account data is transmitted electronically from BOA to CFG.[5] The account information then populates in the appropriate fields in CFG's computerized data system. Those fields include name, address, phone, social security number ("SSN"), etc.[6]

---

[4] BOA has not suggested it did not receive all the notices required by FED. R. BANKR. P. 2002 in the McClures' case. Indeed, as BOA is listed in the McClures' schedules repeatedly, BOA surely received all notices in the case.

[5] Trial transcript, vol. I, p. 183.

[6] *See* Plaintiff's exhibit 25-1, CFG 0001 – CFG 0006.

5

CFG uses the number that populates the SSN field for each account to perform an automatic bankruptcy scrub on that account.[7] The number that populated the SSN field for both accounts turned out to be Qualico's tax ID number (though in the xxx-xx-xxxx format of a SSN), not McClure's SSN.[8] When that number was used to conduct a scrub for each account, neither detected Qualico's bankruptcy. And because CFG did not scrub using McClure's social security number, neither scrub detected the McClures' personal bankruptcy. In other words, the results of neither scrub indicated to Rebelo or Osborne that either McClure or Qualico had filed bankruptcy.

When Osborne received the account ending in 3299, McClure was not listed as a co-obligor on the account, nor was there a phone number listed. Swayze testified that, because no phone number was listed on the account assigned to Osborne, it appears that Osborne obtained an Accurint[9] report on November 30, 2007, that identified McClure as the owner of Qualico and gave his date of birth, SSN, address, and telephone number (the same home telephone number that automatically populated the phone number field for the account assigned to Rebelo).[10] Though at that point Osborne had McClure's SSN, presumably because he was assigned to collect only from Qualico he did not perform a separate bankruptcy scrub using McClure's SSN.

---

[7] Swayze testified that CFG does not perform bankruptcy scrubs using any search criteria other than the number that populates the SSN field. Trial transcript, vol. I, p. 285 [dkt. no. 96]. For example, CFG does not scrub for bankruptcies by searching under the account holder's name. Trial transcript, vol. I, p. 285.

[8] *See* Plaintiff's Exhibit 25-1, CFG 0001 and CFG 0004.

[9] Accurint is a service provided by LexisNexis that debt collectors can use to locate debtors. *See* http://www.accurint.com/collections.html.

[10] *See* Plaintiff's Exhibit 25-1, CFG 0002

6

When Rebelo received the account ending in 2099, McClure was listed on the account as a co-obligor. Despite the fact that both McClure and Qualico were listed as co-obligors on the account, only one bankruptcy scrub was performed.[11] Rebelo made no effort to perform a second bankruptcy scrub before attempting to collect the debt.

Osborne placed several calls to McClure on November 30, 2007. McClure attempted to return each call, and he finally reached Osborne that afternoon. McClure testified that Osborne said he was glad McClure finally called him back. Osborne also said that McClure was a man for facing up to his obligations.[12] According to McClure, Osborne told him that someone was likely headed to his house and that CFG would likely be filing suit against him that day to collect the debt owed to BOA.[13] McClure testified that, because of Osborne's hostility on the phone, he anticipated a hostile confrontation with whomever was allegedly headed to his house.[14]

Before Osborne could go on, McClure interrupted him and informed him of the McClures' personal bankruptcy and of Qualico's bankruptcy.[15] McClure also gave Osborne his bankruptcy attorney's contact information.[16] Swayze testified that CFG employees are trained to put accounts on protected status if they learn of a bankruptcy

---

[11] *See* Trial transcript, vol. I, p. 278.

[12] Trial transcript, vol. I, p. 22.

[13] Trial transcript, vol. I, p. 23. As Osborne was supposedly pursuing collection from Qualico, it is unclear why he apparently threatened McClure personally.

[14] Trial transcript, vol. I, p. 24.

[15] Trial transcript, vol. I, p. 27.

[16] The fact that McClure informed Osborne of his personal bankruptcy, Qualico's bankruptcy, and his attorney's contact information is verified by the fact that Osborne entered that information into CFG's computer system. *See* Plaintiff's Exhibit 25-1, CFG 0002, line 45; Trial transcript, vol. I, p. 268 [dkt. no. 96].

filing.[17] Protected status prevents employees from contacting the debtor on the protected account.

Because of the way CFG's computer system is designed, however, the protected status did not extend to the account assigned to Rebelo, even though Qualico was listed as the primary obligor for both accounts and the same address and tax ID number was reflected in CFG's system for both accounts.[18] That is, the information that a particular collector enters into the system with respect to an account is not automatically available to other collectors working other accounts with the same name, address, and tax ID number.[19] All of the information is, however, stored on the same server.[20]

Thus, still personally unaware of the McClures' bankruptcy, Rebelo sent a collection letter to the McClures on December 3, 2007, three days after McClure's conversation with Osborne.[21] Three days after that, on December 6, 2007, Rebelo attempted to call McClure, though the attempt was unsuccessful.

Because neither Osborne nor CFG was aware of the McClures' bankruptcy when Osborne contacted McClure to collect on the account that was assigned to him, Osborne's collection attempt does not amount to a knowing violation of the discharge injunction. The question, then, is whether notice to Osborne of the McClure's bankruptcy is

---

[17] Trial transcript, vol. I, p. 235.

[18] Plaintiff's Exhibit 25-1, CFG 0001 and CFG 0004.

[19] An attempt to collect the debt from Qualico would not violate section 524(a)(2), since it could not receive a discharge. As violation as to Qualico of the injunction provided by Code § 362(a) has not been asserted in the McClures' complaint, the court need not discuss such a violation. However, that Osborne's knowledge that Qualico had filed bankruptcy was not available to Rebelo, thus leaving the latter believing he could pursue Qualico, illustrates the failure of CFG's system to protect adequately against efforts to collect from a bankrupt.

[20] Trial transcript, vol. I, p. 217.

[21] Trial transcript, vol. I, p. 218.

sufficient to put CFG on notice such that Rebelo's collection attempt amounted to a knowing violation by CFG of the discharge injunction. The court concludes that such notice was sufficient with respect to CFG.

Though McClure was not listed as a co-obligor on the account worked by Osborne, Osborne obtained McClure's information and entered it into his computer. When Osborne called McClure, McClure informed Osborne of both his and Qualico's bankruptcy filings, and Osborne entered that information into his computer and put the account on protected status. The fact that CFG's computer system does not transmit that information to other collectors who are working on another of that same debtor's accounts does not excuse CFG from violating the discharge injunction after having received notice of the McClures' bankruptcy. "Creditors are obligated to maintain procedures to ensure that they do not violate section 524, and may be held liable for damages and attorney's fees if they do not." 4 COLLIER ON BANKRUPTCY ¶ 524.02[2][b] (15th ed. rev. 2009) (citing *In re Rousch*, 88 B.R. 163 (Bankr. S.D. Ohio 1988); *In re Conti*, 50 B.R. 142 (Bankr. E.D. Va. 1985)); *See In re Nassoko*, 405 B.R. 515, 520-21 (Bankr. S.D.N.Y 2009).

CFG's procedures to ensure that it does not violate the discharge injunction are clearly inadequate. The initial bankruptcy scrub produced no hits, even though Qualico had filed for bankruptcy, and CFG did not perform a bankruptcy scrub using any other search criteria. When Osborne obtained McClure's personal information, he did not perform a second bankruptcy scrub, and Rebelo did not perform a second bankruptcy

9

scrub, even though there was a second obligor listed on the account.[22] When Osborne finally learned about the McClures' and Qualico's bankruptcies (by unknowingly violating the discharge injunction), there were no means by which that information was transmitted to Rebelo, who was working on an account with the same primary obligor, address, and tax ID number. CFG simply cannot contend that it did not knowingly violate the discharge injunction because its left hand did not know what its right hand was doing. When Rebelo attempted to collect after CFG had received actual notice of the bankruptcy filings, CFG knowingly violated the discharge injunction and is liable for civil contempt.

### C. Peter Rebelo

For the reasons discussed above with respect to CFG, the court concludes that there is no evidence that Rebelo had personal knowledge of the bankruptcy filings when he tried to collect on the account assigned to him. Thus, while his investigation—the bankruptcy scrub—was inadequate, he did not knowingly violate the discharge injunction, and he is not liable for civil contempt.

### III. Damages

Pursuant to Code sections 105, 362, and 524, the McClures pray that the court hold the Defendants in contempt and award the McClures actual damages, attorney's fees, and punitive damages. Bankruptcy courts may award damages pursuant to the civil contempt power in section 105(a) of the Code. *Cadles Grassy Meadows II, LLC, v. Gervin (In re Gervin)*, 300 Fed. Appx. 293, 300 (5th Cir. 2008); *Placid Refining Co. v. Terrebonne Fuel and Lube (In re Terrebonne Fuel and Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997). Section 105(a) of the Code states: "The court may issue any order,

---

[22] Rebelo clearly would have known that his data—which included only Qualico's tax identification number—was incomplete and that any scrub he performed would produce results only for one of the two debtors assigned to him.

process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A civil contempt order "which compensates a debtor for damages suffered as a result of a creditor's violation of [the discharge injunction is] both necessary and appropriate to carry out the provisions of the bankruptcy code." *Terrebonne Fuel and Lube*, 108 F.3d at 613. "In cases in which the discharge injunction was violated willfully, courts have awarded debtors actual damages, punitive damages and attorney's fees." 4 COLLIER ON BANKRUPTCY ¶ 524.02[2][c] (15th ed. rev. 2009) (and cases cited therein). Actual damages may include damages for emotional distress. *Id*.

Actions that violate the discharge injunction are willful if the creditor that violates the discharge injunction knows the injunction has been entered and intends the actions that violate it. *Id*. That the actions are intentional—as opposed to the actual violation of the injunction being intentional—is sufficient. *See Helmes v. Wachovia Bank (In re Helms)*, 336 B.R. 105, 109 (Bankr. E.D. Va. 2005). Based on the foregoing discussion in part II of this memorandum opinion, the court finds, based on clear and convincing evidence, that BOA and CFG willfully violated the discharge injunction.

**A. Actual Damages**

The McClures seek actual damages, including compensation for emotional distress. At the trial, McClure testified that he experienced severe emotional distress and sleeplessness as a result of the phone calls from CFG. The McClures, however, have established at most a tenuous, correlative relationship between McClure's alleged emotional distress and CFG's actions.[23] That limited and ambivalent evidence of

---

[23] In his initial response to requests for admission, McClure's response to the query "Admit you have suffered no actual damages as the result of any act or omission committed by Defendant Creditors

11

correlation does not equate to evidence of causation.[24] The court concludes, therefore, that the McClures have not met their burden of proof in establishing that McClure's emotional distress and sleeplessness were caused by CFG's actions.

The McClures have, however, expended substantial time and effort in prosecuting this lawsuit. Without the willingness of aggrieved debtors to prosecute violations of the discharge injunction of section 524(a)(2), such violations would go unchecked by the court. The Code has as one of its underlying purposes providing a fresh start to a discharged debtor. *Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007) (citing *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)). If violations of the discharge injunction go unpunished, creditors will lack the necessary incentive to avoid violating the law, and an underlying purpose of the Code will be undermined.[25] In order to ensure that debtors are not hesitant to prosecute violations of the discharge injunction, they should be awarded actual damages to compensate them for the time and effort they expend in the process. In this case, the court awards the McClures $2,500 in actual damages[26] for the time and

---

Financial Group, LLC" was "Admit at this time" (*see* Plaintiff's Exhibit 31-1), though he later amended the response to "Denied" (*See* Plaintiff's Exhibit 31-2). Lam, testifying based on his expertise as a physician, was ambivalent at best in establishing a causal relationship between CFG's actions and McClure's sleeplessness and anxiety. For example, on direct examination Lam testified that it is "possible" that Post Traumatic Stress Disorder could manifest several months after a threatening phone call. Trial Transcript, vol. II, p. 432. But during cross-examination Lam was asked whether "there is some causation between this phone call and any of [McClure's] medical conditions?". Lam responded, "Not the one phone call." Trial Transcript, vol. II, p. 440.

[24] This is not to say McClure's experience with CFG's employees was pleasant. The court does not consider the line between being an aggressive agent and a bully to be so fine that CFG cannot service its clients without resort to such crude scare tactics.

[25] McClure's distress and his communications with counsel also illustrate vividly that debtors may not fully appreciate the relief provided by a discharge. Should creditors feel safe in ignoring the discharge injunction, some debtors—especially if not represented, or if represented by counsel less diligent than the McClures'—may be intimidated into paying discharged debts.

[26] This sum is based on the court's estimate that the trial, trial preparation, depositions, and consultation with their counsel required about 25 hours of each the McClure's time. At a rate of $50 per hour, and in the absence of more in the record, $2,500 is fair compensation for their time.

effort they expended in prosecuting this adversary proceeding, for which BOA and CFG will be jointly and severally liable.

**B. Attorney's Fees**

The McClures also ask the court to award them attorney's fees totaling $85,189.09. The court has carefully reviewed the records submitted by the McClures' counsel for reasonableness and to ensure that all fees and expenses were incurred during the prosecution of this adversary proceeding. *See Flores v. Oh (In re Oh)*, 2009 U.S. App. LEXIS 23681 (9th Cir. 2009).[27] There were several items in those records that the court finds unreasonable. First, there were two attorneys for the McClures present at each deposition, and the court finds that attendance of more than one attorney was unnecessary and so unreasonable. Second, there were three attorneys present for the McClures at the trial of this adversary proceeding, and the court finds that more than two would be unreasonable. Third, the court finds that fees and expenses incurred in researching the Fair Debt Collection Practices Act (the "FDCPA") are unreasonable.[28] The total unreasonable fees and expenses incurred amount to $5,349.95. Thus, the court awards the McClures $79,839.14 in attorney's fees, for which BOA and CFG will be jointly and severally liable.

---

[27] CFG and BOA questioned the high cost of attorney services based on want of harm to the McClures. First, the need to encourage enforcement of the discharge injunction counsels against too great parsimony is assessing fees. Second, the refusal of CFG to acknowledge error—and a pre-trial dispute between CFG and BOA over responsibility for the violation of the injunction—added to the cost of attorneys. Had the two defendants accepted responsibility for their conduct early in this adversary proceeding, the cost of the McClures' counsel would have no doubt been much lower.

[28] Assuming this court had jurisdiction to entertain a claim under the FDCPA, the McClures asserted no such claim. Moreover, the FDCPA applies only to consumer debts, and the debts in question in this adversary proceeding are commercial debts. Finally, the purpose of payment of the fees is to offset the effort required to vindicate this court's order. Investigating FDCPA claims did not advance that vindication and so the fees incurred are not here compensable.

### C. Sanctions

Finally, the court finds that the actions of BOA and CFG in violating the discharge injunction were sufficiently egregious to warrant sanctions. By failing to adopt measures sufficient to prevent violations of the discharge injunction and then willfully violating the discharge injunction, BOA and CFG have demonstrated a lack of concern for the law. The injunction of section 524(a)(2) and that provided by section 362(a), which in the McClures' case the former replaced (*see* Code § 362(c)(2)(C)), are at the heart of bankruptcy protection. *See, e.g., In re Waldo*, 2009 Bankr. LEXIS 3453, *81 (Bankr. E.D. Tenn. 2009); *In re Pappas*, 106 B.R. 268, 270 (D. Wyo. 1989). It is only by reason of these provisions that the court is able to ensure debtors the interim protection promised by the filing of a petition and the true fresh start that a discharge is supposed to bring. To protect its own authority as well as to give debtors the relief Congress intended, a bankruptcy court must act promptly and firmly to stop conduct violative of section 362(a) or 524(a)(2) and to prevent future breach of those provisions. This is particularly important when, as is true of BOA and CFG, the entity violating the stay deals with millions of consumers, many of whom will be in bankruptcy cases; BOA's and CFG's procedures for ensuring compliance with the law must be seamless.

The court, therefore, concludes that it is both reasonable and necessary to sanction BOA and CFG in order to deter BOA and CFG from violating any discharge injunction in the future. *See* 11 U.S.C. § 105(a).

The court hereby sanctions BOA in the amount of $100,000, payable to the registry of the court, and sanctions CFG in the amount of $50,000, also payable to the

registry of the court. Each sanction will be suspended and need not be paid if, within 90 days of the entry of this memorandum opinion, by affidavit either the President or General Counsel[29] of each company submits to the court new procedures his or her company has adopted to prevent future violations of any discharge injunction.

### IV. Conclusion

BOA and CFG willfully violated the discharge injunction of Code § 524(a)(2) and are therefore in contempt of this court. The McClures have incurred actual damages in the amount of $2,500 and reasonable attorney's fees in the amount of $79,839.14, for total damages of $82,339.14, for which the court hereby holds BOA and CFG jointly and severally liable. Additionally, BOA's and CFG's actions in violation of the discharge injunction were sufficiently egregious to warrant the imposition of sanctions in the amounts of $100,000 for BOA and $50,000 for CFG, payment of which may be mooted as described above. The court will enter a separate judgment to such effect.

### END OF MEMORANDUM OPINION ###

---

[29] In order to avoid misunderstanding, the President of BOA is Kenneth D. Lewis, or any successor, and its General Counsel is Edward P. O'Keefe, or any successor.