

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**



**Signed May 6, 2010**                                                    **United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE | § | |
| | § | CHAPTER 7 |
| DANNY JOE MCCLURE AND | § | |
| KIMBERLY DESKINS MCCLURE, | § | CASE NO. 07-43036 (DML) |
| | § | |
| DEBTORS. | § | |

| | | |
|---|---|---|
| | § | |
| DANNY JOE MCCLURE AND | § | |
| KIMBERLY DESKINS MCCLURE | § | |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | ADV. NO. 08-04000 |
| | § | |
| BANK OF AMERICA, | § | |
| CREDITORS FINANCIAL GROUP, LLC, | § | |
| AND PETER REBELO, | § | |
| | § | |
| DEFENDANTS. | § | |

### Memorandum Opinion on Motions for Reconsideration

Before the court are the motions for reconsideration filed by BOA[1] and CFG (the "BOA Motion," the "CFG Motion" and, together, the "Motions") by which BOA and CFG ask that the court readdress its Memorandum Opinion entered on November 23, 2009 (the "Prior Opinion"), in the above-styled adversary (the "Adversary") and the accompanying judgment entered on the same day (the "Judgment"). The McClures filed responses to the Motions on December 21, 2009, and, on February 9, 2010, Professor Nancy Rapoport (the "Amica"), at the court's request and in accordance with its order of January 13, 2010, filed a brief as amica curiae[2] (the "Amica Brief") addressing the issues raised by the Motions.[3] BOA and CFG responded to the Amica Brief on February 24, 2010, and February 25, 2010, respectively. On March 1, 2010, the court heard argument respecting the Motions, principally from BOA and CFG.

This matter is subject to the court's jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (O). This memorandum opinion represents the court's findings of fact and conclusions of law and modifies the Prior Opinion accordingly. FED. R. BANKR. P. 7052, incorporating FED. R. CIV. P. 52(b).

## I. Background

The facts underlying the Adversary are stated in the Prior Opinion. In essence, BOA had contracted with CFG to collect debts owed to it. The McClures were obligated to BOA on certain credit card accounts of Qualico, a company of which McClure was the

---

[1]    Terms not otherwised defined in this Memorandum Opinion have the meaning given them in the Prior Opinion (as defined below).

[2]    In its order, the court incorrectly referred to Professor Rapoport as an "amicus curiae," a term she used in the Amica Brief to avoid confusion.

[3]    The Amica served without compensation and was not directed to assume any particular posture respecting the Prior Opinion. The court expresses its gratitude to the Amica for her assistance.

principal.  Notwithstanding notice of the McClures' chapter 7 filing and subsequent discharge,[4] BOA transmitted two of these accounts to CFG for collection from Qualico and McClure.  CFG assigned the accounts to two different employees, Osborne and Rebelo.  Each ran a bankruptcy scrub on the account assigned to him using a number purporting to be an employer identification number for Qualico.  Neither scrub detected Qualico's bankruptcy.

However, when Osborne, handling an account showing only Qualico as an obligor, contacted McClure, he learned of the bankruptcies filed by both Qualico and McClure and entered that data in CFG's computer database.  Some days thereafter, Rebelo, despite CFG's knowledge, attempted by letter and telephone to collect the other account from both McClure and Qualico.  Upon Rebelo being advised by McClure of the bankruptcies, all efforts to collect the accounts ceased.

The Adversary followed.  By the Adversary, the McClures sought actual and punitive damages and attorneys' fees based on the violation by BOA and CFG of the injunction of section 524(a)(2) of the Code.  Following trial, the court, in the Prior Opinion, held that: (1) BOA and CFG had willfully violated that injunction and so were in contempt of court; (2) the McClures were only actually, quantifiably damaged to the extent they were required to expend time and effort in vindicating the section 524(a)(2) injunction; (3) BOA and CFG were jointly and severally liable for both those damages to the McClures and the McClures' attorneys' fees;[5] and (4) BOA and CFG should be fined $100,000 and $50,000 respectively.  The last of these assessments would be suspended

---

[4]       Qualico also filed a chapter 7 case.  The court has no evidence respecting BOA's notice of that case.

[5]       As discussed below, the term "attorneys' fees" is, unfortunately, not entirely accurate.

and BOA and/or CFG would be excused from payment upon showing that their respective in-house procedures had been corrected to ensure against future violations of section 524(a)(2) in similar circumstances.

## II. Issues

BOA and CFG do not argue that their conduct did not violate the injunction of section 524(a)(2).[6] Rather they assert in the Motions that the court erred in four respects in the Prior Opinion. They thus raise the following issues:

1. May the court award money damages to the McClures by reason of the time and effort put in by them in connection with the Adversary as opposed to quantifiable, actionable harm to them?

2. Did the court abuse its discretion in its award of attorneys' fees?[7]

3. Can BOA and CFG be held jointly and severally liable for amounts awarded to the McClures and their attorneys?

4. Does this court lack the authority to impose the conditional sanctions of $100,000 and $50,000 upon BOA and CFG respectively?

CFG also insists in the CFG Motion that it was only attempting to collect from Qualico and therefore did not violate the discharge injunction with respect to the McClures. The evidence, however, makes it clear that CFG, through Rebelo, was

---

[6] The argument was made that BOA and CFG did not set out willfully and maliciously to violate the discharge injunction, and the court accepts that. They did, however, violate the discharge injunction with knowledge of its existence and, as discussed below, the McClures suffered as a result, albeit not in readily quantifiable degree. The offense here is in the procedures of BOA and CFG which necessarily led to violation of the discharge injunction.

[7] BOA and CFG assert that the damages the court awarded to the McClures in the Prior Opinion were improper and therefore the McClures were not entitled to an award of attorneys' fees. They argue in the alternative that, even if the McClures were entitled to an award of attorneys' fees, the amount awarded was excessive.

attempting to collect from McClure as well, and the evidence does not suggest that Osborne, in his contact with McClure, ever indicated his collection efforts were directed at Qualico.  McClure was listed as a co-obligor on the account assigned to Rebelo, and like Osborne he left McClure with the clear impression his collection efforts were directed at him personally.[8]  Thus, this argument is not consistent with the evidence and warrants no further discussion.

### III.  Discussion

#### A.  Award to The McClures

By the Judgment, as discussed in the Prior Opinion, the court awarded the McClures $2,500.00 in damages.  In the Motions, BOA and CFG argue that, as the court found the McClures suffered no actual damage as a result of the violation of the injunction of section 524(a)(2), they are not entitled to a monetary award.  CFG and BOA further argue that case law bars a monetary award to a party for time and effort expended in connection with litigation.

As to the first of these arguments, essentially a "no harm, no foul" argument, BOA and CFG misperceive the court's findings in the Prior Opinion.  While the court held that the McClures had failed to prove a causal nexus between the injunction

---

[8]     McClure testified that, in a call on November 30, 2007, Osborne told him that he "owed a large sum of money that [BOA] had loaned me, and that it was probably too late in the process, someone was likely headed to my house that day and they were most definitely filing papers in the court to begin the process of suing me."  Trial Transcript, vol. 1, p. 23, ll. 7-11.

Similarly, McClure testified, "I received a call from a Peter Rebelo from CFG [on December 6, 2007] that was pretty much the same scripted words and tone that I had received from Mr. Osborne the previous week, and he left a longer message telling me pretty much the same thing . . . A little more hostility in this message . . . saying that they had already sent someone to my house . . . and they should arrive – if they weren't already on my doorstep . . . and he was certain that the papers had already been filed . . . filing suit against me . . . ."  Trial Transcript, vol. 1, p. 35, ll. 15-24.

Neither BOA nor CFG rebutted this testimony.

violation and the stress and other health problems McClure experienced and testified to, the court also noted that McClure's encounters with CFG were unquestionably unpleasant.  That the harm to the McClures did not rise to an actionable level does not mean there was no harm at all.  It is clear from the McClure's trial testimony that his contacts with CFG caused McClure anxiety and contributed to his problems sleeping.[9]  If the actions of CFG cannot be found to be the proximate cause of quantifiable damages, its conduct was certainly hurtful and offensive not only to the McClures but also to the law and the court.  To say that this sort of behavior did not cause "harm" warranting the finding of a "foul" is akin to arguing that torture that leaves no mark cannot be deemed torture at all.

As to the cases barring monetary awards for time and effort spent in litigation, those cases are distinguishable from that at bar.  In each of those cases the action being pursued was not enforcement of a court order or vindication of the court's authority.[10]  In the case at bar, absent commencement of the Adversary, BOA and

---

[9]     The "techniques" used by CFG, as illustrated by the testimony cited in the preceding footnote, were clearly calculated to instill fear in a debtor.  McClure testified that he was panicked by the calls from CFG.  *See, inter alia,* Trial Transcript, vol. 1, p. 36, ll. 6-17.  As to BOA, it regularly monitored calls made by CFG's employees to debtors.  Trial Transcript, vol. 1, pp. 151-58.  The court doubts that CFG's treatment of McClure was unique, so it is likely that BOA knew of the tactics used by CFG in collecting accounts.

[10]    BOA and CFG cite the court to, *e.g., Committee for Idaho's High Desert v. Yost*, 92 F.3d 814 (9th Cir. 1996) (time spent litigating trademark infringement is not compensable as damages for the infringement); *Tana Oil & Gas Corp. v. McCall*, 104, S.W.3d 80 (Tex. 2003) (one who tortiously interferes with an attorney-client relationship by suing the attorney and client in the same action is not liable to the attorney for the value of the attorney's time and the expenses incurred in defending himself); *Craddock v. Goodwin*, 54 Tex. 578 (1881) (expenses in attending court and loss of time prosecuting one's suit cannot be submitted to the jury as proof of actual injury); *Northwest Otolaryngology Assoc. v. Mobilease, Inc.*, 786 S.W.2d 399 (Tex. App.—Texarkana 1990) (time spent in investigation and depositions is not compensable in a contract case); *Eberts v. Businesspeople Personnel Services, Inc.*, 620 S.W.2d 861 (Tex. App.—Dallas 1981) (in suit to enforce a restrictive covenant, expenses of litigation are not recoverable as damages unless expressly provided for by contract or statute); *Phillips v. Latham*, 523 S.W.2d 19 (Tex. App.—Dallas 1975) (in suit over improper trustee's sale, expenses of litigation are not recoverable as damages).

CFG would never have been held accountable for their violation of the injunction of section 524(a)(2). The distress and discomfort caused to the McClures by their wrongful conduct would have passed unnoticed, subject, as discussed below, to repetition in the future.

Moreover, as the Amica stated in the Amica Brief, "It is beyond cavil that the time and money spent in prosecuting a violation of the discharge injunction are actual damages for that violation, if the violation is proven at trial." Amica Brief, p. 9. While the court may have measured the award to the McClures in terms of the time and effort spent by them on litigation of the Adversary, the award was made, first, because of the importance of encouraging parties to defend and vindicate orders of the court. Absent willingness of debtors to pursue such actions, violations of section 524(a)(2) and its companion provision, section 362(a), would likely proliferate. Second, while the McClures may not have been able to connect the actions of BOA and CFG to quantifiable damages, the court would certainly find that the McClures were caused distress and discomfort.

For the foregoing reasons, the court will not alter the Judgment as to the award of $2,500.00 to the McClures. To the extent relief from that portion of the Judgment is sought, the Motions are DENIED.

B. Attorneys' Fees

---

The parties cited only one case factually similar to the one at bar for the proposition that the McClures may not recover damages based on time and effort required to prosecute BOA's and CFG's discharge violations. *See Hutchings v. Ocwen Federal Bank, FSB (In re Hutchings)*, 348 B.R. 847 (Bankr. N.D. Ala. 2006). But *Hutchings* is not, of course, binding on this court, and is distinguishable from the case at bar both as to the section of the Code involved (section 524(a)(2) versus section 362(a)) and the facts.

By the Judgment, as discussed in the Prior Opinion, the court awarded the McClures attorneys' fees and expenses in the amount of $79,839.14. Both BOA and CFG argue in the Motions that this award was disproportionate and constitutes an abuse of the court's discretion. The court concludes that the award of attorneys' fees must be modified, though not for the reasons pressed in the Motions.

During trial of the Adversary, Newbern testified that he had agreed to remit to the McClures one-half of any fees awarded to him.[11] In formulating its ruling in the Prior Opinion respecting attorneys' fees, the court considered whether an agreement by counsel to remit part of awarded fees to the benefit of his client violated section 504 of the Code and concluded that section 504 was inapplicable. However, upon reconsideration, the court concludes that an agreement by an attorney to so reward a client is improper.

Newbern's agreement with the McClures amounted to an inducement to the McClures to commence the Adversary.[12] Offering such an inducement is perilously close to barratry, as defined in Black's Law Dictionary. BLACK'S LAW DICTIONARY 144 (7th ed. 1999).[13]

While the court believes it is important that debtors and their counsel have appropriate incentives to bring violations of section 524(a)(2) to the attention of the

---

[11] Trial Transcript, vol. 2, p. 384, ll 16-24. While BOA and CFG called the court's attention to this fact, they did not fully explore its significance; the court ought to have done so, nevertheless, on its own.

[12] As this was not addressed in the Prior Opinion, the Amica did not address it in the Amica Brief.

[13] The court does not conclude that Newbern set out to act improperly. His candor in describing his arrangement with the McClures demonstrates that he saw nothing inappropriate in what he was doing. Nevertheless, just as BOA should be held accountable for a violation of Code § 524(a)(2) that occurred through carelessness rather than malice, Newbern cannot escape the consequences of improperly agreeing to share his fees with his clients.

court, it does not wish to encourage attorneys to seek out and induce debtors to pursue such violations.  In many cases, an unintentional, technical violation of an injunction will not warrant commencement of a suit.  Indeed, in the case at bar, but for the second collection effort by Rebelo, the court would be disinclined to find any liability, at least on the part of CFG.  Countenancing the inducement by attorneys of debtors to bring actions for innocent violations of injunctions could lead to obviously undesirable results.

Given the court's view that Newbern did not enter into his agreement with his clients out of nefarious motives, the court might sustain the award of attorneys' fees, at least in part, but the court concludes that any payment from such an award to the McClures would be unethical and contrary to public policy.  On the other hand, the court is not prepared to direct Newbern not to perform under his agreement with his clients; to do so would reward him unduly for his (presumably unintentional) wrongdoing and could be seen as condoning barratrous conduct.  Thus the court concludes it has no alternative but to limit its award of attorneys' fees to Newbern to $8,074.51, representing Newbern's expenses, which amount is not subject to sharing with the McClures.

For the foregoing reasons, the Judgment will be modified to reduce the award to Newbern to $8,074.51.  The Motions are to such extent GRANTED.[14]

C.  Joint and Several Liability

In the Judgment, as provided by the Prior Opinion, the court found BOA and CFG jointly and severally liable for the awards to the McClures and Newbern.  BOA

---

[14]     The court's award is without prejudice to application by Newbern (or, if appropriate, the Amica) for fees incurred in defense of an unsuccessful appeal by BOA and/or CFG.

and CFG argue in the Motions that (1) as their conduct was not joint, they cannot be held jointly liable; and (2) as no violation of section 524(a)(2) would have occurred by either without the acts or omissions of the other, each should have no liability.[15]

As to the first of these arguments, the conduct of BOA and CFG was essentially tortious. In tort law, if the independent conduct of two parties, when compounded, results in foreseeable harm to another, the parties are jointly and severally liable to the victim for his or her damages. *See* Restatement (Second) of Torts § 879 c. a (1979) ("One whose tortious conduct is otherwise one of the legal causes of an injurious result is not relieved from liability for the entire harm by the fact that the tortious act of another responsible person contributes to the result"). In the case at bar, CFG's violation of section 524(a)(2) followed BOA's referral when BOA was already on notice of the McClures' discharge of the accounts on which Qualico and McClure were liable. The likelihood of harm to the McClures was thus clearly foreseeable by BOA. BOA, upon referring the accounts should have anticipated CFG's collection efforts. That CFG was required to conduct a bankruptcy scrub does not excuse BOA: BOA provided CFG only with Qualico's employer identification number (which itself may have been incorrect), not McClure's social security number, and thus with insufficient data to learn of the McClures' bankruptcy. CFG, in its turn, compounded BOA's error by again attempting to collect (through Rebelo)

---

[15]  Essentially, BOA argues that it should not be held jointly liable because CFG was supposed to determine whether the account had been discharged in bankruptcy. BOA claims that it is permissible for a creditor to use a so-called independent contractor to determine whether a debtor has filed bankruptcy. But this argument ignores the fact that BOA had *actual knowledge* of the McClures' bankruptcy and discharge when it referred the accounts to CFG for collection. CFG argues that it should not be held jointly liable because BOA's knowledge of the bankruptcy cannot be imputed to CFG, and CFG's procedures, which the court has found to be inadequate, do not protect against a situation where BOA sends them the incorrect identifying information for two related accounts.

one of the accounts from McClure after learning of his bankruptcy. In short, the conduct of BOA and CFG is intertwined such that, just as with joint tortfeasors, liability for the awards to the McClures and Newbern must extend to each equally and to both.

As to the argument that neither BOA nor CFG is liable because the violation of section 524(a)(2) by each could not have occurred but for the improper acts or omissions of the other, to accept such an argument would insulate from liability for violation of section 524(a)(2) (or 362(a)) any creditor using a collection agent, as well as the agent itself. There could be no collection effort absent the act of the collection agent, and the agent could not act without the creditor's referral. To conclude that the law is as BOA and CFG would have it would strip the protections afforded to debtors by applicable provisions of the Code of any teeth. "A failure to hold [BOA] and CFG jointly and severally liable would create an incentive for either of the defendants to stick their heads in the ground, ostrich-like, and refuse to tighten up their internal policies." Amica Brief, p. 17.

On the contrary, the law is clear that a creditor that employs another to collect a debt in violation of section 524(a)(2) or section 362(a) is itself guilty of a stay violation. *See Finnie v. First Union Nat'l Bank*, 275 B.R. 743 (E.D. Pa. 2002); *In re Lafferty*, 229 B.R. 707 (Bankr. N.D. Ohio 1998); *Walker v. M & M Dodge (In re Walker)*, 180 B.R. 834 (Bankr. W.D. La. 1995); *In re Roush*, 88 B.R. 163 (Bankr. S.D. Ohio 1988). Likewise, if the party undertaking the collection effort knows of the debtor's bankruptcy, it, as well, clearly knowingly violates the applicable injunction.

*See In re Bryer*, 386 B.R. 895 (Bankr. M.D. Fla. 2008); *Patrick v. Check Brokerage Corp. (In re Patrick)*, 300 B.R. 915 (Bankr. S.D. Ill. 2003).

Before leaving this subject, the court must address BOA's argument that, as its contract with CFG specifies that CFG is not BOA's agent, BOA cannot be held accountable for CFG's acts. *See* Plaintiff's Exhibit 13-2, p. 9, ¶ 13.0. The McClures, however, were not party to the agreement between BOA and CFG. While that agreement might prevent one of the parties to it from claiming an agency relationship in a dispute with the other, it does not bar others from asserting that CFG was acting as BOA's agent. *See* Restatement (Third) of Agency § 1.02 (2006) ("Whether a relationship is characterized as agency in an agreement between parties . . . is not controlling."); 3 Am. Jur. 2d Agency § 19 (2010) ("The manner in which the parties designate the relationship is not controlling, and if an act done by one person in behalf of another is in its essential nature one of agency, the one is the agent of such other notwithstanding that he or she is not so called."); 3 Am. Jur. 2d Agency § 17 (2010) ("[A]n agency by estoppel may be created insofar as third persons are concerned from acts and appearances which lead third persons to believe that it has been created.").

Given the facts before the court, it is clear that CFG was indeed acting for BOA. BOA did not transfer to CFG its claims against Qualico and the McClures; rather CFG was attempting when it contacted McClure to collect those claims for the benefit of BOA. To argue that BOA is not responsible for CFG's actions in performing that service for BOA amounts to insisting that a creditor may cause violation of the

injunction of section 524(a)(2) with impunity so long as it hires an independent contractor to do the dirty work.

As for BOA's reliance on CFG's obligation to conduct a bankruptcy scrub, BOA was, or should have been, aware that CFG conducted its scrubs using only employer identification or social security numbers.  In the case at bar, not only did BOA fail to provide CFG with McClure's social security number, thus frustrating the purpose of the bankruptcy scrub; also the scrub failed even to detect Qualico's bankruptcy – whether because BOA transmitted an incorrect employer identification number[16] or for some other reason.

For the foregoing reasons, the court will not modify the Judgment as to the joint and several liability of BOA and CFG.  To the extent they seek that relief, the Motions are DENIED.

D.  Sanctions

In the Prior Opinion the court held that the procedures used by CFG and, hence, BOA[17] were defective in protecting against violations of section 524(a)(2) and 362(a).[18]  The court therefore imposed conditional sanctions intended to cause both to correct their ineffective procedures to avoid similar failures in the future.  BOA and

---

[16]     Reliance on numbers transmitted party-to-party is questionable.  It is all too easy for a multi-digit number to be incorrectly transposed due to human error.  It is also troubling that, though BOA had a record of the McClures' bankruptcy, that information was not transmitted to CFG.

[17]     As noted above, BOA knew or should have known what procedures CFG used to ensure against violations of sections 524(a)(2) and 362(a).

[18]     Here, as elsewhere in this memorandum opinion, the court refers to the fact that BOA and CFG violated the automatic stay of Code § 362(a) in Qualico's case.  The court does not mean by these references to suggest that violation of the stay in Qualico's case is the basis for relief granted against BOA or CFG.  Rather, as clearly indicated in the Prior Opinion, the court considers violation of the stay in Qualico's case as evidence of the inadequacy of the procedures used by BOA and CFG.

CFG argue that the sanctions imposed by the court amount to the improper exercise

by the court of the power of criminal contempt.  CFG also argues that its procedures

are adequate and that it would be unduly burdensome to correct its procedures.

1.      CFG's Procedures

Because the sanctions imposed by the court were motivated by what it saw

as CFG's defective procedures, it is appropriate to begin by addressing the latter

arguments.  CFG argues, first, that its violation of section 524(a)(2) (and section

362(a) in Qualico's case) was a fluke.  During oral argument, counsel for CFG stated

that, since the Adversary was filed in January 2008, no evidence has surfaced, such as

other lawsuits, to suggest that CFG has violated a bankruptcy injunction as it did in

the case at bar.  Further, counsel pointed out that CFG had never been sued based on

facts like those presented by the Adversary.

To begin with, there can be no question that CFG's procedures proved defective

in the case at bar.  There is no dispute that Osborne, an employee of CFG, learned of

the bankruptcies of the McClures and Qualico before Rebelo attempted to collect

debts from the McClures and Qualico in violation of, respectively, section 524(a)(2)

and section 362(a).  There is no dispute that Osborne promptly entered into CFG's

computer database data reflecting the bankruptcies of the McClures and Qualico.

There is no dispute that Rebelo did not access that information in CFG's database but

rather relied solely on a bankruptcy scrub performed only on what apparently

purported to be Qualico's employer identification number.  As a result, at a time

when CFG unquestionably had known for a week of the bankruptcies of the

McClures and Qualico, Rebelo, acting for CFG, and through it for BOA, attempted to

collect a debt in violation of section 524(a)(2) (as to the McClures) and section 362(a) (as to Qualico).

CFG's procedures allow multiple accounts respecting the same debtor to be assigned to different employees.  CFG's procedures make no provision for one of those employees to be apprised of what other employees learn.  Thus, if by reason of, *e.g.*, an erroneous social security or employer identification number, the bankruptcy of a debtor is missed in CFG's scrub, when one CFG employee learns of that bankruptcy, other of its employees will continue their collection efforts notwithstanding that knowledge.  As discussed below, CFG could and should protect against this scenario.

As to the absence of evidence that this scenario has ever occurred other than in the case at bar, first, the court has no more than counsel's statements to that effect.[19] Second, even accepting counsel's assertions as proven facts, that no one has filed suit or otherwise reported similar violations of sections 524(a)(2) and 362(a) is insufficient to convince the court this sort of breach of the Code's protections of debtors could not – will not – happen again.  Third, there is no assurance that in the past one or more debtors did not, out of fear, respond to a second collection call occurring by reason of CFG's defective procedures by paying the discharged (or stayed) debt.  Finally, multiple accounts maintained between a debtor and a creditor are hardly uncommon; thus the risk of CFG's procedures leading to repeated efforts to collect accounts known by CFG to be owed by bankrupt debtors will remain very

---

[19]    While the court does not doubt that counsel was truthful in her statements, those statements do not amount to evidence on which the court may rely.  *See, e.g., Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000) ("[T]he opinions, allegations, and conclusory statements of counsel do not substitute for evidence.").

real unless and until procedures are adopted by CFG to protect against such an eventuality.

Turning next to the burden a change in procedures would impose on CFG, the court first notes that the burden must be balanced against CFG's duty to obey the law. Even if correcting its procedures to avoid a recurrence of the sort of mistake that gave rise to the Adversary were complex and costly, the court would expect CFG to take whatever steps might be necessary to do so. *See, e.g., Garcia v. N.L.R.B.*, 785 F.2d 807 (9th Cir. 1986) ("Despite the current popularity of cost benefit-analysis, we must insist that the rule of law requires, at an irreducible minimum, that all citizens obey the law regardless of economic cost").

But the court questions whether a change in procedures to avoid the problem in the future would be particularly expensive. Among the options available to CFG that would address the issue to this court's satisfaction are: (1) ensure all accounts for a given debtor are assigned for collection to the same employee; (2) perform bankruptcy scrubs using names as well as social security or employer identification numbers; or (3) in addition to a bankruptcy scrub, check the CFG database for information respecting a given debtor before commencing collection efforts. The court makes no claim to computer expertise, but it finds it difficult to imagine that any of these alternatives would do more than minimally inconvenience CFG and its employees. Certainly, in an age when grade school children are adept at searching for data throughout the web, it is not unreasonable to expect adults to be able to access and search a shared database.

For the foregoing reasons, the court reaffirms its conclusion in the Prior Opinion that CFG (and, by extension, its principal, BOA) should and can reform its procedures to better avoid future violations of sections 524(a)(2) and 362(a) of the Code. Indeed, regardless of the ultimate outcome of the Adversary, CFG (and, any of its principals) may expect most unpleasant consequences should it err as to another debtor as it did in the case at bar.[20]

2.      The Court's Authority

BOA and CFG contend that the sanctions imposed by the court in the Judgment pursuant to the Prior Opinion are appropriate only as punishment for criminal (as opposed to civil) contempt. They argue that, as this court has little, if any, power to punish for criminal contempt, the sanctions are impermissible and so should be eliminated. Their argument is well-taken in that a bankruptcy court is, indeed, generally limited to punishing civil as opposed to criminal contempt. The court, however, is not convinced that, in the proper case, it may not use its power to sanction to force general corrective action to alter procedures facially inconsistent with the mandates or prohibitions of the Code or that such action on its part amounts to an exercise of power to punish criminal contempt.

To begin with, the court did not and does not now consider the sanctions to be criminal penalties. As noted in the Amica Brief, as is characteristic of a civil contempt sanction, BOA and CFG were given the keys to their own prison. By

---

[20]      During argument, counsel for CFG indicated CFG is already facing inquiries in other cases regarding the procedure criticized in the Prior Opinion.

satisfying the court[21] that they had reformed their procedures to ensure against a repeat of the conduct giving rise to the Adversary, they would avoid paying the sanctions.

BOA and CFG argue, however, that the sanctions imposed in the Judgment are different from those cases in which "keys to the prison" are sufficient to support sanctions that otherwise would amount to punishment for criminal contempt. They point out that, in the case at bar, the sanctions were not imposed to obtain a case-specific result, another characteristic of an exercise of the civil contempt power. Rather, the court, through the conditional sanctions, sought to effect a general change in their behavior.

The court remains unsatisfied that the Judgment and the Prior Opinion were not an appropriate exercise of its authority. Code § 105(a) gives the court the power to "issue any order . . . or judgment that is necessary or appropriate to carry out the provisions of" the Code. Unlike, *inter alia*, section 105(b) and (d), the authority of the court is not statutorily bounded by the case before it. In the case at bar, it was the failure of the procedures used by CFG and BOA to prevent a violation of section 524(a)(2) that led the court to impose sanctions. In other words, it was the normal methodologies of BOA and CFG that resulted in the breach of a statutorily imposed

---

[21]    BOA argues that, by requiring that the reforms satisfy the court, a line was crossed that made tender of the "keys to the prison" ineffective. BOA apparently mistrusted the court's ability to recognize an effective cure to the defective procedures. The court did not intend, however, to set an insurmountable bar by specifying that it would pass on the corrected procedures. Unlike the typical case of incarceration (or other persuasive punishment) for civil contempt – where the penalty may be avoided by, *e.g.*, disclosing the location of an asset – determining whether the defects in the procedures that led to the Adversary have been cured would require an evaluation that is to some extent subjective. As indicated above, relatively simple steps by CFG would have satisfied the court, and BOA, by proper assurances that it would police its collection agents accordingly, would have done the same. Although the court might have specified those alternatives in the Prior Opinion, it elected to allow BOA and CFG to devise their own, most suitable cure.

injunction. To carry out the provisions of the Code in these circumstances required that the court go beyond the case at bar.

As to the cases cited by BOA and CFG, they are largely inapposite to that before the court. In those cases the issue was the extent to which the bankruptcy court could punish a party for an egregious, unique violation of its injunction – not the scope of the court's authority to ensure that creditors not continue to use procedures that necessarily admit the possibility of violations of the statute. Thus, in *Griffith v. Oles (In re Hipp, Inc.)*, 895 F.2d 1503 (5th Cir. 1990), the bankruptcy court held David Oles in contempt for filing several *lis pendens* in direct violation of a court order.[22] In *In re Norris*, 192 B.R. 863 (Bankr. W.D. La. 1995), the trustee filed a motion seeking to hold the debtor in contempt for failure to comply with a turn-over order. In *Jove Eng'g, Inc. v. IRS*, 92 F.3d 1539 (11th Cir. 1996), the IRS continued to attempt to collect from the debtor despite knowledge of the automatic stay.[23] *Williams v. Estelle*, 566 F. Supp. 1376 (S.D. Tex. 1983), in which a Magistrate Judge assessed an unconditional fine of $500 against a lawyer who did not appear for the first day of a trial, has no apparent significance for the case at bar.

In *Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254 (5th Cir. 2009), the bankruptcy court enjoined Bradley Beutel from transferring property from a trust of

---

[22]     In that case the court also sentenced Oles to five concurrent terms of six months confinement and five cumulative $500 fines. The criminal contempt proceeding was prosecuted under 18 U.S.C. § 401(3) by the U.S. Trustee. On appeal, the Fifth Circuit concluded that the bankruptcy court could not conduct criminal contempt proceedings under title 18. Instead, such contempt proceedings must be prosecuted in district court by the U.S. Attorney, not the U.S. Trustee.

[23]     The facts in *Jove* indicate that the IRS may have had procedures in place that were ineffective at preventing violations of the automatic stay. However, the court did not address the bankruptcy court's power to use its contempt power to coerce a change in those procedures. In fact, the court did not discuss the bankruptcy court's authority at all because the contempt proceeding was before the district court.

which he was formerly the trustee.  In violation of the injunction, Beutel transferred

approximately $300,000 worth of property.  Because the bankruptcy court determined

the trust to be property of the estate, it properly held him in contempt for the value of

the property transferred, payable to the bankruptcy trustee.  Thus, *Ingalls* does not

provide support for the argument of BOA and CFG.

One case cited by BOA actually supports the court's position that it has authority

to compel a change in procedures by way of its contempt power.  In *In re Hill*, 19

B.R. 375 (Bankr. N.D. Tex. 1982), the court concluded that the Farmers Home

Administration (the "FmHA") was in contempt for attempting to offset, in violation

of the automatic stay, against its prepetition claim post-petition monies that may have

been payable to the debtor by another agency within the U.S. Department of

Agriculture.  Like the case at bar, in *In re Hill*, the court found that the debtor had

suffered no actual damages.  The court went on:

> In the belief that in the future—in this case *and in any other bankruptcy
> case, now pending or hereinafter filed*—FmHA and its cognizant officials
> will change their operating procedures and will desist from taking any
> action in violation of the automatic stay provisions of § 362 to collect its
> indebtedness, no remedial sanctions are presently imposed *and the
> assessment thereof is held in abeyance*.

*In re Hill*, 19 B.R. at 380 (emphasis added).  The quoted statement is tantamount to

the court's determination it could impose conditional sanctions.

Although the court believes a meritorious argument exists that it did not abuse its

authority, no appellate court has concluded that a bankruptcy court may use its power

to sanction as did the court in the Prior Opinion and the Judgment.  Nor is this the

case in which to test the proposition that section 105(a) gives the bankruptcy court the

power to force parties to adopt procedures calculated to ensure compliance with the

Code.  Given, *inter alia*, the nature of the fee sharing arrangement between the McClures and Newbern, the court has concluded that the case at bar is too tainted to present fairly the issue of this court's ability to require parties to adopt procedures that will ensure compliance with the Code.  Accordingly, it must modify the Judgment to omit the conditional sanctions of $100,000 and $50,000 that were imposed on BOA and CFG respectively.

For the foregoing reasons, the sanctions imposed on BOA and CFG for their contempt must be vacated.  To the extent they seek that relief, the Motions are GRANTED.

Conclusion

For the reasons stated herein, the Motions are granted in part and denied in part. Counsel for BOA is directed to prepare and submit a modified final judgment conforming to this memorandum opinion.

# # # # END OF MEMORANDUM OPINION # # # #